UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CRAIG HAROLD DEGNER, ) | CASE NO. 3:17CV1138 |
| ) | |
| Plaintiff, ) | JUDGE JEFFREY J. HELMICK |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| NANCY A. BERRYHILL, ) | **REPORT AND RECOMMENDATION** |
| ACTING COMMISSIONER OF ) | **OF MAGISTRATE JUDGE** |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Craig Harold Degner ("Plaintiff"), acting *pro se*, seeks judicial review of the final decision of Nancy A. Berryhill ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB"). ECF Dkt. #s 1, 14. For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case with prejudice.

**I.     PROCEDURAL AND FACTUAL HISTORY**

In June of 2014, Plaintiff protectively applied for DIB alleging disability beginning on December 31, 2013 due to diabetes Type 2, high blood pressure, chronic lower back pain, pinched sciatic nerve, muscle spasms, and vertigo. ECF Dkt. #13 ("Tr.") at 147-149, 165.[1] The SSA denied Plaintiff's application initially and on reconsideration. *Id*. at 73-95, 99-116. Plaintiff requested an administrative hearing, and on December 2, 2015, an ALJ conducted an administrative hearing and accepted the testimony of a vocational expert ("VE") and Plaintiff, who was represented by counsel. *Id*. at 35, 117. On March 4, 2016, the ALJ issued the Decision denying benefits. *Id*. at 18-30. Plaintiff filed a request for review, which the Appeals Council denied on April 12, 2017. Tr. at 1-11.

On June 1, 2017, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On June 22, 2017, this case was automatically referred to the undersigned. On November

---

[1] References to the administrative record in this case refer to the ECF docket number of the cited document and the page number assigned to cited pleading by the ECF system, which can be found in the search box at the top of the page on the ECF toolbar.

28, 2017, Respondent filed an answer to the complaint. ECF Dkt. #12. On the same date, the transcript of proceedings was filed. ECF Dkt. #13.

On December 27, 2017, Plaintiff, pro se, filed a letter, which was docketed as his brief on the merits. ECF Dkt. #14. Plaintiff attached a medical record to his letter and explained that other findings were made on his conditions by other doctors, but he was not able to add these to his case because he was told that it was too late to add them. *Id*. On January 26, 2018, Respondent filed her brief on the merits. ECF Dkt. #16.

**II.     RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE**

**A.     Medical Evidence**

Plaintiff presented to Dr. Baldwin, his primary care physician, on March 26, 2014 to discuss keeping his diabetes in check. Tr. at 292. His medical history and surgical history were noted and his physical examination was normal. *Id*. at 293. He was diagnosed with uncontrolled Type 2 diabetes and essential hypertension. *Id.*

Plaintiff presented to Dr. Baldwin on April 17, 2014 for a diabetes check. Tr. at 289. Plaintiff admitted feeling dizzy, having trouble with his balance, and having nausea. *Id.* His medical history and prior surgeries for a back discectomy and right knee arthroscopy were noted. *Id.* He was diagnosed with benign positional vertigo, Type 2 diabetes uncontrolled, essential hypertension, and chronic low back pain. *Id.* at 290. He was referred to a pain management specialist. *Id*.     On May 29, 2014, Plaintiff presented to Dr. Baldwin to talk about one of his medications. Tr. at 287. He admitted difficulties with his balance and dizziness. *Id*. He was diagnosed with essential hypertension, chronic low back pain, benign positional vertigo and Type 2 uncontrolled diabetes. *Id*. at 288. The medication about which he was complaining was stopped. *Id.*

Also on May 29, 2014, Plaintiff also presented to Dr. Hefzy, a pain management physician, for lumbar pain. Tr. at 271. Dr. Baldwin had referred him to Dr. Hefzy. *Id.* Dr. Hefzy noted that no precipitating event occurred and the mechanism of the injury was unknown. *Id.*  Plaintiff described his pain in the lower lumbar region as aching and marked in severity. *Id*. He indicated that his symptoms were worsening and were worse with activity, but improved with rest. *Id*. Dr.

-2-

Hefzy noted that Plaintiff had not tried therapy since "this started several months ago." *Id.* Plaintiff said that he had a lumbar surgery in 2006, which Dr. Hefzy surmised was likely a discectomy. *Id.*

On May 31, 2014, Dr. Hefzy ordered a lumbar spine x-ray which showed degenerative displaced narrowing, especially at L4-L5, but no acute radiographic abnormality. Tr. at 327.

Dr. Hefzy noted Plaintiff's prior medical history of hypertension, gastroesophageal reflux, transient ischemic attack, and diabetes. Tr. at 271. He also noted Plaintiff's prior surgeries, which included right knee meniscus repair and lumbar discectomy. *Id.* A review of Plaintiff's systems showed positive results for back, joint, and muscle pain, stiffness, and generalized weakness. *Id.* at 272. Physical examination showed negative straight leg raising, ability to ambulate and heel and toe walk, intact reflexes, normal muscle strength of lower extremities, no gross atrophy of the muscles or sensory deficits, but tenderness to palpation over the paravertebral musculature of the lumbar spine. *Id.* at 273. Dr. Hefzy diagnosed Plaintiff with: lumbar disc displacement without myelopathy; thoracic neuritis, lumbosacral neuritis, or radiculitis not otherwise specified; lumbago, unspecified arthropathy, and postlaminectomy syndrome of the lumbar region. *Id.* Dr. Hefzy noted that Plaintiff requested a lumbar facet injection. *Id.* Dr. Hefzy indicated that Plaintiff's pain seemed to be facet mediated and he ordered a lumbar x-ray and facet injections and recommended physical therapy. *Id.* He noted that if Plaintiff did not improve, he would consider a MRI of the lumbar spine. *Id.*

Plaintiff underwent a MRI of his lumbar spine on June 12, 2014 which showed: DDD of T11-T12; L3-L4 moderate spinal stenosis that is part congenital and in part secondary to facet and ligamentous hypertrophy; DDD of L4-L5 with disc bulge, bilateral neural foraminal narrowing and right laminectomy; and DDD at L5-S1 with disc space narrowing and mild disc bulge with foraminal narrowing. Tr. at 270, 325.

Plaintiff presented to Dr. Baldwin on June 13, 2014 for a diabetes check. Tr. at 285. Plaintiff admitted having stressors from legal problems. *Id.* His medical history of Type 2 diabetes, hypertension, GERD and benign positional vertigo was noted, as well as his prior back discectomy and right knee arthroscopy. *Id.* Physical examination was normal and he was diagnosed with Type 2 diabetes uncontrolled, essential hypertension, benign positional vertigo, chronic low back pain,

and routine general examination. *Id*. at 286. He was told to increase one of his diabetes medications and referred for a colonoscopy. *Id*.

On June 19, 2014, Plaintiff presented to the emergency room for a cough that he had for the last few months with body aches Tr. at 349. His neurologic examination was normal, with no tenderness, normal ranges of motion, normal chest x-rays, and normal EKG, which started out as bradycardic. *Id.* He was started on Claritin and told to follow up with his primary care doctor as his Lisinopril may be the source of his chronic cough. *Id.*

Plaintiff presented to Dr. Baldwin on July 16, 2014 with a possible cold and cough/lung issues. Tr. at 282. Plaintiff admitted having a cough and chest discomfort and his medical history of Type 2 diabetes, hypertension, GERD and benign positional vertigo was noted, as well as his prior discectomy and knee arthroscopy. *Id.* Physical examination revealed full range of motion in the neck, clear lungs, a tender left bicipital tendon, and no edema in the extremities. *Id*. at 283. Dr. Baldwin diagnosed Plaintiff with a cough, Type 2 diabetes uncontrolled, essential hypertension, benign positional vertigo, chronic low back pain, and bicipital tendonitis of the left shoulder. *Id*. She prescribed medications. *Id*.

Dr. Baldwin completed Plaintiff's disability forms on July 28, 2014. Tr. at 279. Plaintiff admitted that he had difficulties with his balance and he suffered from dizziness. *Id*. His medical history of Type 2 diabetes, hypertension, GERD and benign positional vertigo was noted, as well as his prior discectomy and arthroscopy. *Id.* Physical examination revealed full range of motion in the neck, a tender left bicipital tendon, no edema in the extremities, and a normal gait. *Id*. at 280. He was diagnosed with a cough, Type 2 diabetes, essential hypertension, benign positional vertigo, chronic low back pain, and bicipital tendonitis of the left shoulder. *Id*.

On August 5, 2014, Plaintiff followed up with Dr. Baldwin for recheck of his hypertension. Tr. at 276. Progress notes indicate that Plaintiff reported balance difficulty and dizziness. *Id*. Plaintiff reported that his sugar runs high in the afternoon and he thought it may be one of the medications that he was prescribed. *Id*. He was diagnosed with diabetes, Type 2, uncontrolled, essential hypertension, benign positional vertigo, chronic low back pain and chronic cough. *Id* at

277. Dr. Baldwin discontinued the medication that Plaintiff thought was increasing his blood sugar, and she started him on another medication. *Id.*

On September 16, 2014, Plaintiff presented to the emergency room complaining of difficulty breathing. Tr. at 312. He reported that he had shortness of breath since June and he had a cough and body aches. *Id*. at 315. He indicated that he abused marijuana. *Id.* at 313. His symptoms at the time of his visit were mild, and a physical examination was normal, including musculoskeletal, respiratory, and cardiovascular examinations. *Id*. at 295-296. The examination of his back was normal, including range of motion, and he had no tenderness. *Id.* at 296. His upper and lower extremities were also normal. *Id*. Chest x-rays showed normal results, but an EKG showed sinus bradycardia. *Id*. at 317, 353. He was diagnosed with chronic cough and received medications. *Id*.

On September 25, 2014, Plaintiff followed up with Dr. Baldwin from his emergency room visit. Tr. at 335. He indicated that he felt better but still felt like something was in his throat and he had a dry cough. *Id*. Physical examination was normal, except for tenderness to his sinuses. *Id.* at 336. His hemoglobin was also high. *Id.* He was diagnosed with chronic cough, uncontrolled Type 2 diabetes, essential hypertension, benign positional vertigo, and chronic low back pain. *Id.* He was referred to an otolaryngologist for the sensation in his throat. *Id*.

On October 2, 2014, Plaintiff presented to Dr. Baldwin to discuss changing his medications, as he reported that he was getting nauseated after taking one of them. Tr. at 333. The medication was discontinued and another was prescribed. *Id*. at 334.

On October 13, 2014, Plaintiff presented to the emergency room complaining of lightheadedness for the last two to three months, but it became worse on that morning upon waking. Tr. at 294, 357. He admitted being nauseous, but denied vomiting, and he indicated that he was concerned because of his family history. *Id.* at 295. His symptoms at the time of his visit were mild, and a physical examination was normal, including musculoskeletal, respiratory, cardiovascular examinations, and his blood pressure. *Id*. at 295-296. The examination of his back was normal, including range of motion, and he had no tenderness. *Id.* at 296. His upper and lower extremities were also normal. *Id*. A basic metabolic test, CBC, an EKG, and chest x-rays also showed normal

results. *Id*. at 298-311. He was diagnosed with abdominal pain and received IV fluids. *Id*. at 301.

On October 16, 2014, Plaintiff had a colonoscopy which showed normal results. Tr. at 341.

On October 23, 2014, Plaintiff presented to Dr. Baldwin for follow up of his breathing problems and welfare paperwork that he needed her to complete. Tr. at 330. Plaintiff complained that he felt lightheaded with dizziness and headaches. *Id.* He reported that he was self-employed sharpening scissors, but he quit because he was unable to make money. *Id.* Plaintiff indicated that he had a cough, but no shortness of breath, no wheezing, and no chest pain, nausea or vomiting. *Id*. He admitted that he had difficulty with his balance and was dizzy. *Id*. His medical and surgical histories were noted and a physical examination showed normal results. *Id.* at 331. He was diagnosed with chronic cough, uncontrolled Type 2 diabetes, essential hypertension, benign positional vertigo, and chronic back pain. *Id*.

On October 28, 2014, Plaintiff saw Dr. Fine for his diabetes at the referral of Dr. Baldwin. Tr. at 343. After a normal examination, except for a slight elevation of Ac1, Dr. Fine diagnosed Type 2 diabetes mellitus, essential hypertension, and mixed hyperlipidemia. *Id*. She recommended ongoing diabetes education, but Plaintiff declined. *Id*. at 344. She adjusted Plaintiff's medications, recommended a low-carb diet, and recommended blood glucose monitoring four times per day. *Id*.

On October 31, 2014, Plaintiff presented to Dr. Coleman, an otolaryngologist, for his chronic cough and sensation in his throat. Tr. at 347. Based upon Dr. Coleman's examination, which showed mild mucosal edema consistent with GERD induced mucosal edema, he diagnosed Plaintiff with a cough and esophageal reflux. *Id.* at 348. Dr. Coleman recommended a gastrointestinal consultation. *Id*.

On November 20, 2014, Dr. Villaneuva, a state agency physician, reviewed Plaintiff's records and opined that with his DDD, diabetes mellitus, spine disorders and essential hypertension, Plaintiff could: lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit, stand and walk up to 6 hours per 8-hour workday, occasionally balance, climb ramps and stairs; never climb ladders, ropes or scaffolds; avoid concentrated exposure to vibration; and avoid all exposure to hazards such as moving machinery and heights. Tr. at 79-80.

On January 28, 2015, Dr. Cruz, a state agency physician, reviewed Plaintiff's records in connection with Plaintiff's request for reconsideration and she affirmed Dr. Villaneuva's assessment. Tr. at 90-92.

On July 21, 2015, Plaintiff presented to Dr. Webb in order to establish her as his primary care physician. Tr. at 436. He complained of moderate left shoulder pain for the last two years with an inability to lift very high. *Id.* Dr. Webb's physical examination showed decreased range of motion and pain in the left shoulder, with Plaintiff unable to lift his left arm higher than shoulder level. *Id.* at 437. She also noted that his left shoulder hung lower than his right. *Id.* at 437. She ordered a shoulder and chest x-ray and prescribed medication. *Id*.

On August 24, 2015, Plaintiff presented for follow up with Dr. Webb and he indicated that he felt well but had minor complaints, such as still having a cough, decreased energy, and poor sleep. Tr. at 434. He complained that one of the medications was not effective. *Id.* He had diminished lungs upon examination and he was diagnosed with acid reflux, shortness of breath, and shoulder pain. *Id*. at 435. A different medication was prescribed for acid reflux, he was started on inhalers, and physical therapy was ordered for Plaintiff's shoulder pain, which was most likely tendinitis. *Id.*

On September 19, 2015, Plaintiff presented to Dr. Williams indicating that Dr. Webb had prescribed physical therapy but he had not heard from anyone. Tr. at 430. Dr. Williams noted that he could not order the therapy, but it was in Dr. Webb's notes, so he was going to obtain an order. *Id*. Plaintiff also had minor complaints, such as a decreased energy level and needed refills of his medications. *Id*. The only abnormal result on physical examination was AC joint tenderness and decreased range of motion and pain in the left shoulder. *Id*. at 431. He was diagnosed with osteoarthritis of the acromioclavicular joint and a MRI or orthopedic evaluation was recommended if the problem persisted following physical therapy. *Id*.

On September 19, 2015, Plaintiff was prescribed physical therapy for a diagnosis of left shoulder impingement. Tr. at 443.

### B.     Hearing Testimony

Plaintiff appeared at the ALJ hearing on December 2, 2015 with counsel, and Plaintiff and a VE testified. Tr. at 35-36. After counsel for Plaintiff indicated that a recent medical record dated November 10, 2015 from Comprehensive Pain Management was requested, but they had not yet received it, the ALJ agreed to leave the record open for 14 days. *Id*. at 38. Plaintiff thereafter testified that he had a driver's license, but it was taken away for two years by a court. *Id*. at 41. He has a GED and was self-employed for several years working four days a week sharpening scissors. *Id*. He would drive to each customer in order to sharpen scissors and he did some sitting and lifted no more than 10 pounds. *Id*. at 42-43. He said that he had to quit because his vertigo worsened and his driving was getting bad. *Id*. He also worked as a material handler, window builder and screen roller for a window company for 16 years. *Id*. Plaintiff testified that he got fired from that job because he failed the drug test. *Id*. at 43.

Plaintiff explained that he cannot work because of his lower back pain and vertigo, which causes him to have no balance. Tr. at 44. He explained that he had back surgery in 2006 and for a short time, his back pain was better, but then it got worse. *Id*. at 45. He reported that he could stand for 10-15 minutes before the pain sets in and he could sit for 1-2 hours before the pain would start. *Id*. As for his vertigo, he testified that it started in January of 2007 and it is constant, with the worst episodes occurring when he lays down. *Id*. at 46. He last fell down due to vertigo about one year ago. *Id*. at 53. He last saw a doctor about his vertigo "years ago," and he tried to give him medications, but none worked. *Id.* at 47. He also indicated that he does not see a doctor for his back and he had physical therapy for it but no injections. *Id*. He explained that he goes to pain management for his left shoulder as he could not lift his arm past halfway up, and his doctor told him that a recent MRI showed that he had two torn tendons in his left arm. *Id*. He said that Dr. Webb told him that he has to get surgery on his shoulder and he had been participating in physical therapy for five weeks. *Id*. at 48. He also reported trouble with his knee. *Id*. at 55.

Plaintiff's counsel asked him about his daily living activities, and Plaintiff reported that he goes out of the house once every two weeks, he mows the yard with the tractor sometimes, and he

pretty much sits around the house and watches television. Tr. at 57. He sweeps his house on occasion and he grocery shops with his adult sons by holding onto the cart. *Id*.

The ALJ then presented the VE with a hypothetical individual with the same age, education and work background as Plaintiff with the following limitations: lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; siting, standing, and walking for up to 6 hours; occasionally climbing ladders, balancing and crawling; frequently stooping; never climbing ladders or ramps; no exposure to unprotected heights or dangerous moving mechanical parts; and only occasional exposure to vibrations. Tr. at 62. The VE testified that such an individual cannot return to Plaintiff's past relevant work, but he could perform other jobs existing in significant numbers in the national economy, such as repack room worker, stock checker, and office helper. *Id*.

The ALJ modified the hypothetical individual, adding that the hypothetical individual could frequently reach overhead and in all directions on the left, the non-dominant arm, and he could understand, remember, and carry out simple, routine tasks. Tr. at 63. The VE testified that such a hypothetical individual could not perform the repack room worker job, but the stock checker and office helper positions would still be available. *Id*. at 64. The ALJ added the limitation of the hypothetical individual not being able to balance, and the VE testified that the stock checker and office helper jobs could still be performed. *Id*.

Plaintiff's counsel then questioned the VE, asking about the source of the numbers used by the VE in determining the number of jobs available, questioning whether the VE knew the local and regional number of jobs available, and whether the VE had specific experience with the jobs of stock checker and office helper. Tr. at 65-71. Plaintiff's counsel noted her objection to the VE's testimony regarding the job numbers at the national economy level and she requested time in which to file a post-hearing brief. *Id*. The ALJ overruled the objection and allowed Plaintiff's counsel 14 days within which to file a post-hearing brief. *Id*. at 72.

### III.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff, who was fifty-two years old on the date of the hearing, suffered from the severe impairments of diabetes mellitus, degenerative disc disease ("DDD") with L3-L4 stenosis, left shoulder impingement, benign positional vertigo, history of anxiety, and history

of right knee arthroscopy. Tr. at 20. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. ("Listings").

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions, such as: lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; sitting, standing, and walking no more than 6 hours per 8-hour workday; frequently lifting overhead and in all directions with the non-dominant left upper extremity; occasionally climbing ramps and stairs; never climbing ladders, ropes or scaffolds; occasionally crawling; frequently stooping; never balancing or kneeling; no exposure to unprotected heights or dangerous moving mechanical parts; occasional exposure to vibrations; and tasks that are simple and routine. Tr. at 23. Based upon this RFC and the testimony of the VE, the ALJ found that Plaintiff could not return to any of his past relevant work, but he could perform jobs existing in significant numbers in the national economy, such as the jobs of stock checker and office helper. *Id*. at 28-29. Accordingly, the ALJ found that Plaintiff was not disabled from December 31, 2013 through the date of the decision and therefore not entitled to DIB. *Id*. at 29-30.

## IV.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## **VI.    ANALYSIS**

In his pro se one-paragraph letter, Plaintiff indicated that findings by other doctors were not included in his case. ECF Dkt. #14. He explained that he wanted to submit to the Court a progress note with a diagnosis from otolaryngologist Dr. Babu, which the Appeals Council had disallowed because it was too late and past the relevant time period. ECF Dkt. #14. He noted that he has been dealing with being off balance for over 10 years and he sometimes falls over. *Id.* Plaintiff attached a progress note dated June 24, 2016 from Dr. Babu, who examined Plaintiff for his vertigo and imbalance. ECF Dkt. #14-1. The progress note indicates that Plaintiff reported no fatigue, no blurred vision, no respiratory problems, and no musculoskeletal complaints at the examination. *Id.* at 2. Dr. Babu examined Plaintiff and found no abnormalities. *Id.* He noted that a VNG showed normal responses, and a MRI in the past showed no retrocochlear pathology. *Id.* Dr. Babu indicated that Plaintiff did have mild chronic changes at the basal ganglia of unknown etiology, and an audiogram showed high-frequency hearing loss bilaterally, which was symmetric. *Id.*

Dr. Babu diagnosed Plaintiff with dizziness and opined that his imbalance was not related to inner ear pathology. ECF Dkt. #14-1 at 2. He discussed physical therapy with Plaintiff and vestibular rehabilitation, but Plaintiff indicated that he had done that in the past and did not want to do it again. *Id.* Dr. Babu noted that he also discussed medical therapy for Plaintiff, but they agreed that it would not make a difference for him. *Id.* Dr. Babu noted that Plaintiff may want to consult with neurology if there was any other pathology to pursue. *Id.*

The undersigned notes that in his letter, Plaintiff does not challenge the legal standards used by the ALJ in her decision and he does not assert that substantial evidence does not support the ALJ's decision. Rather, he asserts that other doctors made other findings that were not allowed by the Appeals Council, and he attaches Dr. Babu's June 24, 2016 progress note and seeks to submit this note for review. ECF Dkt. #14-1. Dr. Babu's progress note occurred after the ALJ's decision as the progress note is dated June 24, 2016, and the ALJ's decision is dated March 9, 2016. ECF Dkt. #14-1; Tr. at 30.

The undersigned further notes that before the Appeals Council, Plaintiff and his representative raised only one issue which alleged that the ALJ erred in the mental RFC that she determined for Plaintiff. Tr. at 261-262. On May 16, 2016, the Appeals Council sent Plaintiff and his representative a letter indicating that it was granting them an additional 25 days within which to file additional evidence or facts. *Id*. at 7-8. The Appeals Council also informed them that any new evidence that they submitted must be new and material to the issues considered by the ALJ in her March 4, 2016 hearing. *Id*. at 8. Plaintiff's representative filed a brief with a request for review on May 24, 2016 and the Appeals Council denied Plaintiff's request for review on April 12, 2017. *Id*. at 5, 13, 261. No records from Dr. Babu were submitted or mentioned in the brief.

Since Dr. Babu's progress notes were dated after the ALJ hearing and were not submitted to the Appeals Council before it made its decision denying the request for review, the Court cannot consider this evidence in reviewing the ALJ's decision. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec*., 96 F.3d 146, 148 (6th Cir. 1994).

However, sentence six of 42 U.S.C. § 405(g) addresses situations where a claimant submits new evidence that was not presented to the ALJ but that could alter the ALJ's ultimate decision. Sentence six of §405(g) provides, in relevant part:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both ...

42 U.S.C. § 405(g). Thus, a "sentence six" remand is appropriate "only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir.2010). Evidence is "new" if it did not exist at the time of the administrative proceeding and "material" if there is a reasonable probability that a different result would have been reached if introduced during the original proceeding. *Id.* "Good cause" is demonstrated by "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. In order to show good cause, a claimant is required to detail the obstacles that prevented him from entering the

-13-

evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir.2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 725 (6th Cir.2012). The Sixth Circuit "takes a harder line on the good cause test' with respect to timing and thus requires that the claimant 'give a valid reason for his failure to obtain evidence prior to the hearing.' " *Id.*, quoting *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986).

Moreover, "[t]he party seeking a remand bears the burden of showing that these [ ] requirements are met." *Hollon ex rel. Hollon v. Comm'r of Social Security*, 447 F.3d 477, 483 (6th Cir.2006).

In the instant case, Dr. Babu's June 24, 2016 progress note is "new" in that it post-dates the ALJ's decision. However, Plaintiff fails to show how this progress note and the diagnoses contained within it are "material." Dr. Babu did diagnose Plaintiff with dizziness. ECF Dkt. #14-1 at 2. However, the ALJ considered Plaintiff's dizziness in her decision, finding that Plaintiff had a severe impairment of benign positional vertigo and indicating in her decision that Plaintiff had reported becoming dizzy easily and having no balance, and that it impacted his daily life. Tr. at 20, 24. The ALJ also noted that while Plaintiff complained of dizziness to his doctors, no medications were prescribed for the condition, no limitations were assessed, and no further treatment was recommended. *Id.* at 25. The ALJ indicated that Plaintiff's treating physician did not indicate concern, discussion, treatment, or limitations for dizziness. *Id.* The ALJ nevertheless cited to Plaintiff's ongoing benign positional vertigo and limited his RFC to work-related tasks that require no balancing, no exposure to unprotected heights or dangerous moving mechanical parts, and only occasional exposure to vibration. *Id.* at 23. Since the ALJ considered Plaintiff's dizziness and limited his RFC accordingly, and Dr. Babu's later diagnosis did not provide any further insight or information relating to the severity or limitations of Plaintiff's dizziness, the undersigned recommends that the Court find that the progress note is not "material" because it does not change the ALJ's decision. *See Salyer v. Comm'r of Soc. Sec.*, 574 Fed. App'x 595, 597 (6th Cir. 2014)(there must exist "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new [evidence]."). In addition, and even if

Dr. Babu's dizziness diagnosis and progress note would have shown a worsening of Plaintiff's dizziness, a sentence six remand is not proper in order to consider evidence that a claimant's condition has deteriorated or worsened since the ALJ's decision. Evidence of a deterioration of a condition is not relevant since it "does not demonstrate the point in time that the disability itself began." *Sizemore v. Sec'y of Health and Human. Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). Thus, the undersigned recommends that the Court find that the attached progress note of Dr. Babu is not material in order to warrant a sentence six remand of his case.

## VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court find that the ALJ applied the proper legal standards and substantial evidence supports her decision. Consequently, the undersigned recommends that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's complaint in its entirety with prejudice. The undersigned further recommends that the Court find that a sentence six remand is not warranted in this case.

DATE: June 26, 2018

                                     */s/George J. Limbert*
                                     GEORGE J. LIMBERT
                                     UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).